IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BILL WICKERSHAM and MAUREEN DOYLE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| CITY OF COLUMBIA, and MEMORIAL DAY WEEKEND - SALUTE TO VETERANS CORPORATION, | ) ) ) ) ) |
| Defendants. | ) |

Case No. 05-4061-CV-C-NKL

**Plaintiffs' Reply to the City of Columbia's and Memorial Day Weekend
Salute to Veterans Corporation's Opposition to Plaintiffs' Motion for Attorneys' Fees**

American Civil Liberties Union of Eastern Missouri

Marilyn S. Teitelbaum, Bar No. 26074
Schuchat, Cook, and Werner
1221 Locust Street
Second Floor
Saint Louis, Missouri 63103
Dan Viets, Bar No. 34067
Attorney at Law
15 North 10th Street
Columbia, Missouri 65201

James G. Felakos, Bar No. 56356
Staff Attorney, American Civil Liberties Union
  of Eastern Missouri
4557 Laclede
Saint Louis, Missouri  63108

COOPERATING ATTORNEYS FOR
ACLU-EM

COUNSEL FOR PLAINTIFFS

**TABLE OF CONTENTS**

I. Discussion.................................................................................................................... 1

   A.  Plaintiffs' Requested Attorneys' Fees Should Not Be Reduced Because Plaintiffs' Successful and Unsuccessful Claims Are Not Distinct in All Respects............................. 1

   B.  Plaintiffs' Use of Multiple Attorneys Was Warranted by the Nature of the Litigation and Is Not a Special Circumstance Rendering the Requested Award Unreasonable. ........ 3

   C.  Limiting the Relevant Legal Market to Central Missouri for Purposes of Determining a Reasonable Hourly Rate Ignores Congressional Intent and Judicial Precedent. ............. 6

   D.  Neither The Number of Hours Billed by the City's Attorney Nor His Stated Hourly Rate Is Dispositive of the Reasonableness of Plaintiffs' Attorneys' Fees.......................... 7

   E.  Other Arguments in Support of the Reasonableness of Plaintiffs' Fee Request. ............... 9

II. Conclusion.................................................................................................................. 10

# TABLE OF AUTHORITIES

*A.J. ex rel L.B. v. Kierst*, 56 F.3d 849 (8th Cir. 1995) .................................................................. 3, 5

*Antolik v. Saks Inc.*, 407 F. Supp. 2d 1064 (D. Iowa 2006) ............................................................. 7

*Bender v. City of St. Ann*, 816 F. Supp. 1372 (E.D. Mo. 1993) ....................................................... 4

*Blackwell v. City of St. Charles*, 726 F. Supp. 256 (E.D. Mo. 1989) .............................................. 4

*Casey v. City of Cabool*, 12 F.3d 799 (8th Cir. 1993) ................................................................. 3, 7

*Catlett v. Missouri Highway and Transportation Commission*, 828 F.2d 1260 (8th Cir. 1987) .... 1

*Chicago Acorn v. Metropolitan Pier and Exposition Auth.*, Case No. 96-4997, 1999 U.S. Dist. LEXIS 4745 (N.D. Ill. March 30, 1999) ...................................................................................... 2

*Chicago Acorn v. Metropolitan Pier and Exposition Auth.*, Case No. 96-4997, 1999 U.S. Dist. LEXIS 9018 *49 (N.D. Ill. June 2, 1999) ................................................................................... 2

*Cole v. Hurt*, Case No. 03-622, 2005 WL 1662023 (E.D. Mo. July 5, 2005) ............................... 10

*Dunn v. Village of Put-In-Bay*, Case No. 02-7252, 2004 U.S. Dist. LEXIS 5618 (N.D. Ohio March 9, 2004) ............................................................................................................................ 1

*Geissal v. Moore Medical Corporation*, 338 F.3d 926 (8th Cir. 2003) .......................................... 9

*Hatfield v. Hayes*, 877 F.2d 717 (8th Cir. 1989) ............................................................................. 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................ 2, 5, 9

*Herbilicious Music v. JFM Investments, Inc.*, Case No. 03-124, 2005 WL 2244521 (E.D. Mo. September 15, 2005) ................................................................................................................. 10

*Hunt v. State of Missouri Dept. of Corrections*, Case No. 99-4158, 2001 U.S. Dist. LEXIS 24376 (W.D. Mo. March 5, 2001) ..................................................................................................... 2, 9

*Newman v. Piggie Park Ent., Inc.*, 390 U.S. 400 (1968) ................................................................. 3

*West v. Aetna Life Ins. Co.*, 188 F. Supp. 2d 1096 (D. Iowa 2002) ............................................. 7, 8

*Wickersham v. City of Columbia*, 371 F. Supp. 2d 1061 (W.D. Mo. 2005) .................................... 4

# I. Discussion.

Defendants' responses to Plaintiffs' request for attorneys' fees assert that Plaintiffs' requested fees should be drastically reduced in large part because Plaintiffs did not prevail on all claims, the case was not factually complex, and the customary attorney fee rates for Central Missouri and not St. Louis or Kansas City are applicable to this case. These arguments ignore the significant result Plaintiffs achieved, the complex factual and legal issues involved, and the unavailability of local counsel to handle this sensitive case in Central Missouri. As discussed in detail below, these points establish that Plaintiffs are entitled to their requested attorneys' fees.

**A.  Plaintiffs' Requested Attorneys' Fees Should Not Be Reduced Because Plaintiffs' Successful and Unsuccessful Claims Are Not Distinct in All Respects.**

Defendants suggest that the fee amount requested should be reduced because this Court protected leafleting activities but not petitioning, arguing that Plaintiff Doyle received relief but Plaintiff Wickersham received none. Defendants' attempt to mechanically separate Plaintiffs for purposes of an attorneys' fee award should be rejected. A quick review of the complaint reveals that both Plaintiffs sought the right to engage in various types of speech activities on the tarmac. Plaintiffs received significant relief in that regard, securing First Amendment rights on the tarmac for both themselves and the public.

The Eighth Circuit refused to grant a similar request for reduction of fees in *Catlett v. Missouri Highway and Transportation Commission*, 828 F.2d 1260 (8th Cir. 1987). In Catlett, the court awarded fees for time spent on behalf of unsuccessful individual plaintiffs where such claims were related to the class plaintiffs' successful claims, stating: "A court should not disallow attorney hours related and necessary to successful claims . . ." *Id.* at 1270. *See also*, *Dunn v. Village of Put-In-Bay*, Case No. 02-7252, 2004 U.S. Dist. LEXIS 5618 (N.D. Ohio

1

March 9, 2004) (court held that plaintiff's attorneys were entitled to all attorneys' fees despite fact that plaintiff prevailed against only one of seven defendants because claims were related).

Moreover, for purposes of an award of attorneys' fees, the Supreme Court has set a high bar for separating unsuccessful from successful claims. Only where an unsuccessful claim is "*distinct in all respects* from [plaintiffs'] successful claims," may the court exclude "hours spent on the unsuccessful claim … in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (emphasis added). Here, it is absolutely clear that Plaintiffs' claims relating to leafleting are not "distinct in all respects" from their claims relating to petitioning. On the contrary, the claims are enmeshed on many levels. Fundamentally, both claims involved the assertion of First Amendment rights. Pragmatically, since Plaintiffs' pursuit of justice on both claims was supported by arguments that were inextricably entwined, the legal work that supported either of those arguments simply cannot be meaningfully distinguished. In fact, in *Chicago Acorn v. Metropolitan Pier and Exposition Auth.*, Case No. 96-4997, 1999 U.S. Dist. LEXIS 4745 (N.D. Ill. March 30, 1999), the court awarded the plaintiff all of its requested attorneys' fees despite the fact that the court did not grant the plaintiff a constitutional right to engage in various forms of speech it requested, including protest activity and solicitation of signatures on a petition (*Chicago Acorn v. Metropolitan Pier and Exposition Auth.*, Case No. 96-4997, 1999 U.S. Dist. LEXIS 9018 *49 (N.D. Ill. June 2, 1999)). *See also*, *Hunt v. State of Missouri Dept. of Corrections*, Case No. 99-4158, 2001 U.S. Dist. LEXIS 24376 (W.D. Mo. March 5, 2001) (this Court did not reduce plaintiffs' attorneys' fees despite fact that they prevailed on retaliation claim but not on sexual harassment claim).

As the Eighth Circuit has explained, a fee award under Section 1988 "properly compensate[s] [a] plaintiff's attorney for time spent on interrelated issues and theories upon

2

which the plaintiff did not prevail." *Casey v. City of Cabool*, 12 F.3d 799, 806 (8th Cir. 1993). Reasoning that "counsel's time is devoted to the case as a whole, rather than to specific theories," the court found that "[t]he dispositive consideration … is whether the issues upon which plaintiff's counsel spent time are interrelated to the central issues of the case." *Id*. Here Plaintiffs' claims were interrelated, and the relief received significantly advanced their requests to engage in speech activity at the Air Show.

**B.     Plaintiffs' Use of Multiple Attorneys Was Warranted by the Nature of the Litigation and Is Not a Special Circumstance Rendering the Requested Award Unreasonable.**

Defendants suggest that this Court should penalize Plaintiffs for using multiple attorneys to pursue their claims, reducing the amount of the attorney fee award requested. As a preliminary matter, a prevailing party's attorneys' fees are *presumptively* recoverable under § 1988 "'unless special circumstances would render such an award unjust.'" *Hatfield v. Hayes*, 877 F.2d 717, 719 (8th Cir. 1989), *quoting*, *Newman v. Piggie Park Ent., Inc.*, 390 U.S. 400, 402 (1968). The "special circumstances" exception, because it is judicially created and not found in the language of the statute, "should be narrowly construed." *Hatfield*, 877 F.2d at 720 (citation omitted). Moreover, the use of multiple attorneys has been recognized by the Eighth Circuit as "both desirable and common." *A.J. ex rel L.B. v. Kierst*, 56 F.3d 849, 863 (8th Cir. 1995). Nor is there any basis, the Eighth Circuit found, for the notion that "a court may reduce attorneys' fees solely on the basis that multiple attorneys helped to secure a prevailing party's success." *Id*. at 864.

Defendants aver that this case and the evidence involved were simple enough to be easily handled by one attorney.[1] This assertion is not true and grossly understates the difficult legal

---

[1] In support of this assertion, Defendant Salute submitted the affidavit of Michael Berry. Mr. Berry's unfamiliarity with this area of First Amendment litigation is demonstrated by his statement that the analytical framework for this type of case is not novel or complex, and his opinion should not be credited. (Berry Aff., ¶ 7). As this Court recognized at the permanent injunction hearing, the legal issues in this case were very complex. Also, Defendant City's attorney can hardly complain about the use of multiple

issues involved in this matter. This case did not involve a stipulated record and facts were disputed even as between the Defendants themselves.[2] In addition, this Court pointed out the fact-intensive nature of the state action question: "The Supreme Court has acknowledged that the state action doctrine has not been a model of consistency, perhaps because it is so fact dependent. There is no single test for determining when there is state action, particularly when the dispute involves the First Amendment." *Wickersham v. City of Columbia*, 371 F. Supp. 2d 1061, 1076 (W.D. Mo. 2005) (citations omitted).

That this case required extensive analysis of the relevant facts and law further plays out in the briefing and the Court's rulings in this case. Although Defendants' briefs were rather short on facts, Plaintiffs' Pre-Trial Brief set forth the relevant facts in 31 pages and Plaintiffs did not, as Defendant Salute suggests at page 4 of its brief, leave it up to the Court "to winnow the wheat from the chaff in the record." Plaintiffs' legal analysis was much more lengthy than Defendants' as well.[3] That these long discussions of the facts and law were necessary is exhibited by the

---

attorneys on this case, as he has done so in other First Amendment cases. *See*, *Bender v. City of St. Ann*, 816 F. Supp. 1372 (E.D. Mo. 1993) (Mr. Kriehbiel was one of three attorneys from three firms for the City); *Blackwell v. City of St. Charles*, 726 F. Supp. 256 (E.D. Mo. 1989) (in a case involving no disputed facts, Mr. Krehbiel and two other attorneys represented the City). Perhaps Mr. Kriehbiel did not need co-counsel here because Salute's counsel, whose hours and rates were not presented to the Court, was arguing the same issues: Mr. Doerhoff was essentially Mr. Kriehbiel's co-counsel.

[2] In support of Defendant Salute's argument that this case was not factually complex, Mr. Berry states in his affidavit that the parties only had two days of depositions. (Berry Aff., ¶ 7). Mr. Berry, who was not involved in the case, was obviously unaware of the marathon nature of the 14 depositions in this case, which actually took place over the course of three days. The 4/20/05 and 4/21/05 depositions took 10 hours and 10.5 hours respectively; and the 7/7/05 depositions took 6 hours. (Pltfs' Exhs. 5B and 6).

[3] Although the mere length of briefs does not tell a complete story, given the length of the Court's Orders, a comparison here provides some guidance on the reasonableness of Plaintiffs' attorneys' hours. Mr. Krehbiel's affidavit states that he has spent 272 hours on the case (which did not include hours from 4/06 spent on the opposition to attorneys' fees) and Defendant Salute claims that Plaintiffs are entitled to no more than 300 hours of attorneys' fees. Yet, Plaintiffs' pre-trial brief was 72 pages in comparison to Salute's brief which was 18 pages and the City's brief which was 16 pages; Plaintiffs' reply to the City's and Salute's pre-trial brief was 25 pages, while the City's reply brief was 9 pages and Salute's reply brief was 17 pages; and Plaintiffs' permanent injunction brief was 17 pages, while the City's was 15 pages and

Court's opinions in this case, with the Order for Preliminary Injunction spanning 61 pages and the Order for Permanent Injunction incorporating the earlier order and adding an additional 22 pages. (*See also*, 2nd Aschemann Aff. - Pltfs' Exh. A, for further justification of time spent).

Moreover, the Eighth Circuit has held that an "uncomplicated" suit does not alone "constitute a 'special circumstance' justifying denial of attorneys' fees to all but one of plaintiffs' attorneys." *A.J.*, 56 F.3d at 863. Nor was this case "uncomplicated." The Supreme Court has recognized the generally complex nature of civil rights litigation (*Hensley*, 461 U.S. at 431 n.4), an observation that was echoed by this Court in remarks made from the bench during oral argument. Defendants' attempt to distinguish this litigation, for purposes of attorneys' fees, from a RICO or anti-trust lawsuit, is patently inconsistent with both the express intent of the legislature that enacted § 1988 and Supreme Court decisions interpreting it. *See*, *Hensley*, 461 U.S. at 430, *citing,* S. Rep. No. 94-1011, at 4 (1976) ("It is intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of *equally* complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature.") (emphasis added).

Defendants' additional arguments pertaining to Plaintiffs' reliance on more than one attorney are similarly flawed. Defendants claim duplication of work, yet ignore the non-billed hours in Plaintiffs' Exhibit 6 and the fact that Ms. Teitelbaum excluded duplicative or unnecessary attorney hours from Schuchat, Cook & Werner's bill (Pltfs' Exh. 3, ¶ 13). Also, Salute's assertion that the presence of unbilled attorneys at depositions necessarily meant that these attorneys lent support obviating the need for a billed second chair attorney is without support. The fact that Plaintiffs' exercised billing judgment by not billing for the presence of a

---

Salute's was 25 pages, and Plaintiffs' had the burden of a reply brief which was 17 pages. Adding all briefs together, Plaintiffs' total 131 pages, the City's total 40 pages, and Salute's total 60 pages.

5

third attorney cannot serve to eliminate the reasonableness of claimed fees for a second chair.[4] Moreover, the unbilled presence of ACLU attorneys was necessary in order to ensure the clients' continuity of service throughout a process that saw the addition of counsel from Schuchat, Cook & Werner after the case had begun to be developed and a change in personnel at the ACLU that occurred during the summer of 2005. Finally, it would be patently absurd and contrary to public policy to suggest that Defendants should be excused from paying a portion of the requested fee award to compensate a qualified and necessary second chair attorney at prevailing rates simply because there happened to be an additional unbilled attorney present in the room for some of the proceedings.[5] Endorsement of that position would have the potential to deprive future plaintiffs of the benefit of continuity of service and would also discourage the practice of having new attorneys observe the work of experienced litigators.

C. **Limiting the Relevant Legal Market to Central Missouri for Purposes of Determining a Reasonable Hourly Rate Ignores Congressional Intent and Judicial Precedent.**

Defendants insist that the relevant market for determining a reasonable hourly rate for legal services is the Central Missouri region and declare that attorneys from St. Louis who "choose to practice in Central Missouri … should be prepared to be paid" Central Missouri hourly rates. This assertion flies in the face of the reasoning behind § 1988 attorney fee awards. As the Eighth Circuit explained:

> To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel. Civil rights would be more meaningful,

---

[4] Although James Felakos and Denise Lieberman attended the July 7, 2005 depositions, only Marilyn Teitelbaum billed for her time. (Pltfs' Exh. 5B, p. 2; Pltfs' Exh. 6, p. 2 and 14). Mr. Felakos attended these depositions because the ACLU was in a transition period, with Ms. Lieberman leaving as legal director, and Mr. Felakos assuming the duties of that position.

[5] Mr. Doerhoff also had a new attorney observing part of the proceedings, including depositions and oral arguments.

then, in those communities (large cities) where experienced attorneys can
command their customary fees. This result would be in direct contravention of the
purpose of diffuse enforcement through the "private attorneys general" concept.

*Casey*, 12 F.3d at 805. In a case like the one before this Court or like *Casey*, which involved a City's violation of an employee's First Amendment rights, "[a] national market or a market for a particular legal specialization may provide the appropriate market." *Id*. (citation omitted).

Finally, even the City found it necessary to hire an attorney in St. Louis to handle this case. As a result it is not surprising that Plaintiffs had to do likewise. In fact, affiant attorneys who practice in the Western District of Missouri, Central Division, Dan Viets (Pltfs' Exh. 12) and Roger Brown (Pltfs' Exh. B), stated confidently that there are virtually no attorneys in Central Missouri willing or able to take on this type of case on behalf of Plaintiffs.

D.     **Neither the Number of Hours Billed by the City's Attorney Nor His Stated Hourly Rate Is Dispositive of the Reasonableness of Plaintiffs' Attorneys' Fees.**

Defendant City of Columbia also points to the low number of hours billed by its own attorney as evidence that the case could have been handled in fewer hours of attorney time and Defendants suggest that the hourly rate charged by the City's attorney provides a relevant basis to determine the reasonableness of attorneys' fees. However, Defendants cite no authority for the proposition that Defendants' own attorney fee expenditures should be determinative of Plaintiffs' entitlement under Section 1988.[6] As a result, Defendants' argument should fail simply as a matter of law. Even as a matter of logic, the argument is fatally flawed and overlooks key facts.

---

[6] Some courts have recognized that hours spent by opposing counsel may be "helpful" in determining whether the amount of time spent by plaintiffs was reasonable. *See*, *Antolik v. Saks Inc.*, 407 F. Supp. 2d 1064, 1075 (D. Iowa 2006); *West v. Aetna Life Ins. Co.*, 188 F. Supp. 2d 1096, 1101 (D. Iowa 2002) (although helpful, "the opponent's time is not an immutable yardstick of reasonableness") (citations omitted). Nonetheless, the *Antolik* court found this basic fact insufficient to show that the plaintiff's counsel wasted time, stating "The Court is not inclined to determine as a legal matter that experienced and dedicated counsel in this case frivolously wasted and duplicated time on matters simply because opposing counsel dedicated less time to the same issues." 407 F. Supp. 2d at 1075. In *West*, a defendant's attorney's failure to supply his own billing records created "considerable doubt" that such records would support its

First, the City was not the only entity defending against Plaintiffs' claims. Any meaningful attempt to compare the amount of hours expended by the opposing parties must take into account not only the City's attorney's hours but also the hours spent on the case by Salute's attorney, whose arguments and evidence Plaintiffs were required to meet in addition to those of the City.[7] Interestingly, Salute has omitted to disclose either the number of hours its attorney spent on the case or his hourly fee for that work.[8] Given the City's eagerness to divulge its own counsel fees, Salute's silence can only be interpreted as strategic and implies that these figures would not support Defendants' effort to reduce Plaintiffs' requested fee award.

Secondly, even if such a comparison was an appropriate governor for the inquiry, an attorney may adjust his rates on the basis of an ongoing relationship with a client, especially where that client is a public entity.[9] It is worth noting that Mr. Krehbiel does not disclose the rate he charges clients other than the City. Furthermore, it is absurd to equate the hourly fee charged a government entity on an ongoing basis, with the substantial risk involved in undertaking the representation of a civil rights plaintiff with no promise of remuneration and at the expense of time spent on the work of paying clients, particularly in a case where the plaintiffs seek only equitable relief.

---

contention about the reasonableness of the plaintiff's attorneys' hours. *West*, 188 F.Supp 2d at 1101. Salute's failure to disclose its counsel fees raises similar doubt in this case.

[7] As demonstrated by Defendants' Suggestions in Opposition to Plaintiffs' Motion for Attorneys' Fees, throughout this litigation the City and Salute have made both overlapping and distinct arguments (sometimes incorporating the other's arguments), that Plaintiffs have been required to meet.

[8] Instead of disclosing its attorneys' fees, Salute provides an affidavit from a third party, Michael Berry, who opines on Central Missouri attorney fee rates without ever actually disclosing his own rates.

[9] *See*, *e.g.*., ABA Model Rule of Professional Conduct 1.5 governing the reasonableness of fees. The Rule provides that reasonableness may depend upon, *inter alia*, "the nature and length of the professional relationship with the client" and "the fee customarily charged in the locality for similar legal services." *Id*.

8

Ultimately, the legal standard for determining reasonable attorneys' fees simply does not include a proportionality requirement and Defendants offer no support for their suggested standard. The established standard is that fees should be awarded "for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 430 n.4. As demonstrated in Plaintiffs' opening brief, the number of hours expended on this case were reasonable, and no downward adjustment is justified.

**E.      Other Arguments in Support of the Reasonableness of Plaintiffs' Fee Request.**

Defendant Salute also complains that certain of Plaintiffs' time entries are not sufficiently specific on the basis that multiple tasks are included in single billing entries. Defendant cites no comparable cases in which a court found such time entries insufficient. Plaintiffs recorded time is consistent with industry practice and sufficiently detailed as to provide notice regarding what work was performed. This Court previously approved similar types of entries in *Hunt*, 2001 U.S. Dist. LEXIS 24376 at *7-8, stating "[a]lthough certain days do include large chunks of time, each day includes a list of the various tasks completed by the Plaintiffs' attorneys on that day."

Defendants also argue that Plaintiffs' claimed hourly rates are higher than rates charged in St. Louis and Kansas City and propose that attorney rates be set at $200 an hour for lead counsel and $175 an hour for associate counsel. Defendants' suggested rate for lead counsel is lower than a rate approved by this Court, for a case filed in 1999 and decided in 2001, awarding lead counsel $250 an hour. *Hunt*, 2001 U.S. Dist. LEXIS 24376 at *11. Since that time, rates have gone up and the circumstances of this case make Kansas City and St. Louis rates the appropriate comparison. In addition, the three St. Louis area cases cited in Mr. Berry's affidavit are not comparable to this case and not demonstrative of area rates for the 2005/06 timeframe. For instance, the *Geissal v. Moore Medical Corporation*, 338 F.3d 926 (8th Cir. 2003) case

9

approved rates for $250 an hour for a case litigated from 1994 through 2001; the *Herbilicious Music v. JFM Investments, Inc.*, Case No. 03-124, 2005 WL 2244521 (E.D. Mo. September 15, 2005) case approved *requested* rates of up to $235 an hour, but it is not clear that the plaintiffs' attorneys in this copyright case were working on a contingency fee basis; and the *Cole v. Hurt*, Case No. 03-622, 2005 WL 1662023 (E.D. Mo. July 5, 2005) case was a prisoner rights case where the court approved *requested* rates of $150 an hour. As Affiant Roger Brown opines, the circumstances of this case, along with the risks involved, justify a rate of $400 to $450 an hour for lead attorney and $300 to $375 an hour for second chair and local counsel. (Exhibit B. p. 3).

Additionally, Defendants have included hours billed to Plaintiffs by paralegals and law clerks in their comparative citations. This falsely inflates their statement of Plaintiffs' attorney time by nearly thirty-five hours. Moreover, as noted in Plaintiffs' opening brief, the use of paralegals and law clerks instead of attorneys with more experience and concomitantly higher billing rates had the effect of reducing the costs in this action.

Finally, the City of Columbia correctly points out that in the Eighth Circuit computer-aided research cannot be independently taxed as an item of cost. This item was inadvertently included in Plaintiffs' submission, and, as such, Plaintiffs agree that $298.98 should be deducted from their bill of costs (as accounted for below).

## II. Conclusion.

The foregoing considerations, together with Plaintiffs' original memorandum and accompanying affidavits and exhibits, warrant an award to Schuchat, Cook & Werner for fees of $174,889.00 plus expenses in the amount of $801.57; and an award to the ACLU-EM for fees of $82,032.50 plus $1,638.79 in expenses. Plaintiffs will also file a supplemental request for hours spent on this reply.

Respectfully submitted,

American Civil Liberties Union of Eastern Missouri

/s/ Marilyn S. Teitelbaum
Marilyn S. Teitelbaum, Bar No. 26074
Schuchat, Cook, and Werner
1221 Locust Street
Second Floor
Saint Louis, Missouri 63103

| Dan Viets, Bar No. 34067 | James G. Felakos, Bar No. 56356 |
| Attorney at Law | Staff Attorney, ACLU-EM |
| 15 North 10th Street | 4557 Laclede |
| Columbia, Missouri 65201 | Saint Louis, Missouri 63108 |

COOPERATING ATTORNEYS FOR ACLU-EM
COUNSEL FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2006, the foregoing was served via the court's electronic filing system upon the following:

Mr. Robert J. Krehbiel
King, Krehbiel, Hellmich, Hentz &
Borbonus, LCC
2000 South Hanley Road
St. Louis, Missouri 63144-1524
FAX (314) 646-1122

Mr. Dale C. Doerhoff
Cook, Vetter, Doerhoff & Landwehr, P.C.
231 Madison
Jefferson City, Missouri 65101
FAX (573) 635-7414

/s/ Marilyn S. Teitelbaum